UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 23-10734 |
| | § | |
| COX OPERATING, LLC, | § | CHAPTER 7 |
| | § | |
| PUTATIVE DEBTOR. | § | INVOLUNTARY |

**MEMORANDUM OPINION AND ORDER**

On Friday, May 12, 2023 Keystone Chemical, LLC, R&R Boats, Inc., Specialty Offshore, Inc., Total Production Supply, LLC, and DLS, LLC (collectively, the "Petitioning Creditors") filed a petition in this Court initiating involuntary chapter 7 bankruptcy proceedings against the above-captioned putative debtor, Cox Operating, LLC (the "Involuntary Case"). [ECF Doc. 1 & 3]. As discussed below, Cox Operating, LLC, a Louisiana limited liability company, is part of an extensive oil-and-gas exploration-and-production conglomerate operating in the Gulf of Mexico offshore of the States of Texas, Louisiana, and Alabama. Cox Operating operates the vast majority of wells held by its nonoperating-working-interest affiliates. The Petitioning Creditors are each Louisiana companies that provided goods and services to the wells operated by Cox Operating.

On Sunday evening, May 14, 2023, Cox Operating and six affiliates filed voluntary petitions for chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Southern District of Texas ("SDTX").[1] The Petitioning Creditors filed a motion in this Court on Monday, May 15, 2023, which the Court interpreted as a request for a determination by this Court under 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 1014(b) as to the venue in which the

---

[1] Those affiliates, MLCJR LLC [No. 23-90324], M21K, LLC [No. 23-90325], EPL Oil & Gas, LLC [No. 23-90326], Cox Oil Offshore, L.L.C. [No. 23-90328], Energy XXI Gulf Coast, LLC [No. 23-90329], and Energy XXI GOM, LLC [No. 23-90330], together with Cox Operating, LLC [No. 23-90327], are being jointly administered under MLCJR LLC case (collectively, the "Voluntary Cases"). *See* No. 23-90224, ECF Doc. 103 (Bankr. S.D. Tex. May 16, 2023).

bankruptcy of the putative debtor, Cox Operating, and its six affiliates shall proceed (the "Venue Motion"). [ECF Docs. 10 & 26]. Cox Operating filed an emergency motion to transfer the venue of the involuntary case to the SDTX pursuant to 28 U.S.C. §§ 1404(a) and 1412 (the "Transfer Motion"). [ECF Doc. 15]. Amarillo National Bank filed responses objecting to the Venue Motion and in support of the Transfer Motion. [ECF Docs. 23 & 43]. With leave of Court, the Petitioning Creditors filed a reply brief in support of their Venue Motion. [ECF Doc. 68].

On Monday, May 22, 2023, this Court held an evidentiary hearing to resolve the Venue Motion and the Transfer Motion. The list of witness and exhibits admitted into evidence are listed in this Court's Order of May 22, 2023. [ECF Doc. 72]. Pursuant to Federal Rules of Bankruptcy 9014 and 7052, the Court now makes the following findings of fact and conclusions of law.[2] Based upon the record in the Involuntary Case as well as in the Voluntary Cases, the documentary evidence and testimony presented to the Court at the hearing, and applicable law, the Court determines that the debtors' bankruptcy cases shall proceed in the SDTX.

## JURISDICTION

This Court has jurisdiction over these contested matters pursuant to 28 U.S.C. § 1334(b) and *General Order of Reference 2021-5* issued by the United States District Court for the Eastern District of Louisiana. The contested matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

---

[2] To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

**FINDINGS OF FACT**

Cox Operating is a Louisiana limited liability company that is indirectly wholly owned by non-debtor Cox Investment Partners, L.P. MLCJR LLC, the lead debtor in the Voluntary Cases, is a Texas limited liability company also owned by Cox Investment Partners, L.P. (69.25%), as well as non-debtor WIN Management LLC (24.79%) and CLS Development LLC (5.96%). The remaining five debtors in the Voluntary Cases are all Delaware entities and are all wholly owned, direct or indirect subsidiaries of MLCJR LLC.

Cox Operating operates wells owned by other debtor- and non-debtor affiliates pursuant to a series of operating agreements and incurs all direct operating expenses. Cox Operating employs all employees at offshore locations and in offices in Houston, Dallas, and New Orleans, totaling approximately 430 people (excluding independent contractors and temporary staff) as of the Petition Date. *See* P.C. Ex. 42. That said, at this time, the debtors' enterprise is managed by Chief Executive Officer Craig Sanders, Chief Financial Officer Robbie Dykes, and Chief Restructuring Officer Ryan Omohundro from Houston, Texas and New Orleans, Louisiana.

According to the testimony of CRO Omohundro of Houston-based Alvarez & Marsal North America, LLC ("A&M") at the hearing, since acquiring certain assets out of another E&P company's bankruptcy in 2019, the debtors have continued to experience adverse events that have curtailed production and, therefore, strained the debtors' liquidity. In 2020, the OPEC price war drove oil prices down, while stay-at-home orders and well shut-ins associated with the COVID-19 global pandemic sharply reduced production. Over the course of 2020 and 2021, the debtors' assets suffered significant damage from five named storms and hurricanes, leading to further reductions in production. Omohundro described a 2020 collision by a foreign-flagged vessel into a platform located off the coast of Louisiana owned by one of the debtors, resulting in major

damage to the platform (which is still offline) and substantial loss of production to date; the debtors are currently pursuing litigation to recover damages associated with the incident in the United States District Court for the Eastern District of Louisiana.  Finally, Omohundro testified that the debtors are bound by volumetric production payment agreements through December 2023 that have become onerous to the debtors and have contributed to the debtors' liquidity problems.  At this time, the debtors' production volume is half what it was in 2019.

The debtors initially retained A&M in October 2022 for financial and restructuring advisory services.  In December 2022, the debtors retained Houston-based Moelis & Company LLC as their investment banker to explore refinancing and capital-raise possibilities.  In January 2023, the debtors retained a New York-based team of the law firm of Latham & Watkins LLP and also appointed an independent manager to MLCJR LLC.  In April 2023, the debtors appointed Omohundro as CRO and expanded MLCJR LLC's independent manager's scope of employment to include management of Cox Operating, Energy XXI GOM, and EPL Oil & Gas, LLC.

After exhausting options for out-of-court financing with no success and with trade debt mounting, the debtors and Moelis were forced to pivot and pursue debtor-in-possession financing options.  After no third-party prospective lenders responded to Moelis's solicitations, the debtors entered negotiations with its prepetition secured lenders, Amarillo National Bank ("Amarillo") and BP Energy Company ("BPEC"), for post-petition financing and use of cash collateral.  After weeks of hard-fought negotiations in April and May 2023, the debtors and its lenders settled on a term sheet containing financing terms, covenants, and milestones.  *See* CoxOp Exs. 24–26.   In the Voluntary Cases filed on May 14, 2023, the debtors propose a quick timetable to pursue an orderly liquidation of substantially all of their assets as a going concern with the ability to toggle to a stand-alone plan of reorganization.  To fund operations and an auction process, the debtors seek

court approval for a first-lien senior super-priority term loan facility in the aggregate new money principal amount not to exceed $75 million (the "DIP Facility"). On May 16, 2023, the debtors in the Voluntary Cases obtained interim approval to draw $20 million under the DIP Facility for operations. *See* No. 23-90324, ECF Docs. 116 & 171 (Bankr. S.D. Tex. May 16, 2023).

The debtors estimate Amarillo's prepetition secured claim pursuant to an April 2016 credit agreement, as amended, to total approximately $80 million and estimate BPEC's prepetition secured claim, the result of a terminated swap agreement, to total approximately $200 million. According to Omohundro's testimony as well as reports filed in the Voluntary Cases, the majority of the general unsecured (non-insider) creditor body consists of Louisiana trade creditors. *See* No. 23-90327, ECF Doc. 1 (Bankr. S.D. Tex. May 14, 2023). The debtors estimate prepetition trade debt to total approximately $211 million. *See* P.C. Ex. 43. Additionally, the debtors estimate a total of approximately $7.8 million to be owed on prepetition bond premiums to secure the performance of the debtors' plugging-and-abandonment ("P&A") obligations and may have significant near-term P&A obligations to perform associated with acquisitions made by the debtors between 2005 and 2013.

## CONCLUSIONS OF LAW

### A. Burden of Proof and Legal Standards for Determination of Venue

The contested matters before the Court present the problem of competing petitions filed in different—but proper—venues against the same debtor and some of its affiliates. To solve the problem, the Court must determine where the cases *should* proceed.

To begin: The bankruptcy venue statute is crafted in the disjunctive, providing four independent, alternative grounds for proper venue. Venue is proper in the district in which the person or entity's domicile or residence (*i.e.*, the state of incorporation or organization for

corporate entities), principal place of business, or principal assets have been located for 180 days prior to the bankruptcy filing. *See* 28 U.S.C. § 1408(1). Venue is also proper in the district in which there is pending the bankruptcy case of a person or entity's affiliate, general partner, or partnership. *See id*. § 1408(2). Because Cox Operating is organized under the laws of Louisiana, venue for the Involuntary Case is proper in this Court under § 1408(1). And because MLCJR LLC is organized under the laws of Texas and properly filed its voluntary bankruptcy petition in the SDTX under § 1408(1) prior to any of its affiliates, venue for the remaining Voluntary Cases is also proper in the SDTX under § 1408(2).

Section 1412 of the Bankruptcy Code allows this Court to "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Tracking the text of 28 U.S.C. § 1412, Bankruptcy Rule 1014(b) directly addresses the problem here—petitions involving the same debtor or related debtors filed in different courts—and instructs in relevant part:

> If petitions commencing cases under the Code . . . are filed in different districts, regarding, by or against (1) the same debtor, (2) a partnership and one or more of its general partners, (3) two or more general partners, or (4) a debtor and an affiliate, the court in the district in which the first-filed petition is pending may determine, in the interest of justice or for the convenience of the parties, the district or districts in which any of the cases should proceed.

FED. R. BANKR. P. 1014(b). There is no dispute that the putative debtor here and the other debtors in the Voluntary Cases pending in the SDTX are affiliates as that term is defined in 11 U.S.C. § 101(2). Given the parties' consensus that joint administration of these cases is legally and practically necessary, *see* [ECF Doc. 42, ¶ 22; ECF Doc. 45, ¶¶ 22–27]; No. 23-90224, ECF Doc. 2 (Bankr. S.D. Tex. May 14, 2023), this Court, as the court in which the first-filed bankruptcy petition is pending, assumes the task of determining where both the Involuntary Case and the Voluntary Cases should proceed.

6

The decision to determine the venue in which these cases will proceed is based on an analysis of convenience and fairness as applied to the unique facts and circumstances of these debtors. *See In re Hermitage Inn Real Estate Holding Co., LLC*, No. 19-10214, 2019 WL 2536075, at *3 (Bankr. D. Vt. June 19, 2019); *In re Caesars Entm't Operating Co.*, No. 15-10047, 2015 WL 495259, at *5 (Bankr. D. Del. Feb. 2, 2015). Indeed, "[j]ustice and convenience are two separate paths to transfer under § 1412; either can justify transfer on its own." *In re BDRC Lofts, Ltd.*, No. 12-11559, 2013 WL 395129, at *2 (Bankr. W.D. Tex. Jan. 31, 2013) (citations omitted). Typically, when evaluating a § 1412 motion to transfer a voluntary case and no other voluntary or involuntary case is pending in another district, the moving party shoulders the burden to show by a preponderance of the evidence that a transfer of venue is warranted. *See, e.g.*, *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) (citing, among others, *Gulf States Exp. Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1390 (2d Cir. 1990); *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1241 (5th Cir. 1979)). In circumstances as these, however, where the Petitioning Creditors in the Involuntary Case and the debtors in the Voluntary Cases have filed competing motions to determine the venue in which all of the cases should proceed, "it is not entirely clear which party, if any, bears the burden of proof" with respect to those competing motions. *In re Caesars Entm't Operating Co.*, 2015 WL 495259, at *5; *see also In re Hermitage Inn Real Estate Holding Co., LLC*, 2019 WL 2536075, at *4.

This Court agrees with its sister courts that the language of Bankruptcy Rule 1014(b), which requires the Court to "determine, in the interest of justice or for the convenience of the parties, the district or districts in which any of the cases should proceed," suggests that "the burden is, in a manner of speaking, on the Court." *In re Caesars Entm't Operating Co.*, 2015 WL 495259,

at *5; *see also In re Hermitage Inn Real Estate Holding Co., LLC*, 2019 WL 2536075, at *4. "Ultimately, this issue is best viewed in terms of deference [to one or the other party's choice] as opposed to burden of proof." *In re Caesars Entm't Operating Co.*, 2015 WL 495259, at *5. So, for example, although it is true that in a traditional § 1412 transfer analysis that "[a] debtor's choice of forum is entitled to great weight if venue is proper," *see In re Enron Corp.*, 274 B.R. at 342, "[t]he level of deference a debtor's choice of forum is entitled to is less clear in the situation where an involuntary bankruptcy petition was filed against the debtor in a different venue prior to the debtor filing its voluntary petition," *In re Caesars Entm't Operating Co.*, 2015 WL 495259, at *7. Likewise, the Petitioning Creditors are not entitled to deference with respect to their choice of forum based solely on rote application of the "first-filed" rule which, in traditional civil litigation, "gives a court discretion 'to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court.'" *In re Tribune Co.*, 418 B.R. 116, 124 (Bankr. D. Del. 2009) (quoting *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971–72 (3d Cir. 1988)). The "first-filed" rule is an equitable doctrine—"not a rigid or inflexible rule to be mechanically applied." *E.E.O.C.*, 850 F.2d at 976. And its applicability to bankruptcy proceedings is not at all clear or widely accepted, particularly in these circumstances where Bankruptcy Rule 1014(b) provides clear instruction.[3]

Upon weighing the convenience to the parties and the interests of justice, the Court is convinced that deference here should be given to the debtors' choice of forum.

---

[3] The Petitioning Creditors assert in the Venue Motion that "[t]he filing of the involuntary petition in this matter clearly preceded the filing of the Putative Debtor's petition in the USBC, SDTX and as the first-filed matter, this Court is entitled to determine that it has priority over the later-filed petition." Venue Motion, ¶ 18. That is not an altogether accurate interpretation of 28 U.S.C. § 1412, the process provided by Bankruptcy Rule 1014(b), or the case law dealing with instances in which petitions involving the same debtor or related debtors are filed in different courts.

### B. Convenience of the Parties

When considering a determination of the venue in which cases should proceed under 28 U.S.C. § 1412 and Bankruptcy Rule 1014(b), courts have considered the following factors:

(1) The proximity of creditors of every kind to the Court;

(2) The proximity of the bankrupt (debtor) to the Court;

(3) The proximity of the witnesses necessary to the administration of the estate;

(4) The location of the assets; [and]

(5) The economic administration of the estate.

*In re Commonwealth Oil Refining Co.*, 596 F.2d at 1247.[4]  Courts weighing those factors historically focused on the location of the debtors' and creditors' professionals and their proximity to the bankruptcy court. *See, e.g.*, *In re Enron Corp.*, 274 B.R. 327, 347 (Bankr. S.D.N.Y. 2002). But "the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate." *In re Commonwealth Oil Refining Co.*, 596 F.2d at 1247; *see also In re Amazing Energy MS, LLC*, Nos. 20-01243, 20-01244 & 20-01245, 2020 WL 4730890, at *11 (Bankr. S.D. Miss. June 25, 2020).  In 2015, the *Caesar's Entertainment* court concluded that "in this day of law firms with multiple offices across the nation, convenient and accessible airports, electronic access to information and courts dockets at every lawyer's fingertips, it is fair to say that both [the Delaware court and the Illinois court] are convenient forums" and concluded that "convenience factors are a 'push' and do not factor into the Court's decision." *In re Caesars Entm't Operating Co.*, 2015 WL 495259, at *7.

---

[4] The sixth factor, "the necessity for ancillary administration if bankruptcy should result" is not helpful in this context.

In 2023, this Court concludes the same, given the short distance between Houston and New Orleans and the fact that, after the national shared experience during the COVID-19 pandemic, most courts in the country at this time, including this Court and the SDTX, continue to prioritize remote participation in hearings and trials for the safety, convenience, and financial considerations of parties. Whether these cases proceed in Houston or New Orleans, parties in interest will be able to participate fully in the bankruptcy process and debtors' and creditors' professionals will be able to continue to advocate for their clients in the manner that best serves their clients' goals and interests.

### C. Interests of Justice

"The interest of justice prong is a broad and flexible standard," *In re Enron Corp.*, 274 B.R. at 349, and its test "involves balancing more intangible considerations," *In re Abengoa Bioenergy Biomass of Kan., LLC*, No. 16-10446, 2016 WL 1703927, at *6 (Bankr. D. Kan. Apr. 25, 2016). "In evaluating the interest of justice, the Court must consider what will promote the efficient administration of the estate, judicial economy, timeliness, and fairness." *In re Enron Corp.*, 274 B.R. at 349.[5] "It has also been noted that it is 'appropriate to add as an additional relevant factor, through it may rarely be applicable, the integrity of the Bankruptcy Court system.'" *In re Patriot Coal Corp.*, 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012) (quoting *In re Éclair Bakery Ltd.*, 255 B.R. 121, 142 (Bankr. S.D.N.Y. 2000)).

---

[5] "[I]n considering both the efficient administration of the estates and judicial economy, it is . . . necessary to take account of the 'learning curve' [which] involves consideration of the time and effort spent by the current judge and the corresponding effect on the bankruptcy case in transferring venue." *In re Enron Corp.*, 274 B.R. at 349. The Court has none of those concerns. The Involuntary Case and Voluntary Cases are barely a week old. Unlike the courts in *Enron* and *Manville*, neither court involved here has developed a substantial learning curve in this case enough to justify retention or transfer. *See In re Enron Corp.*, 274 B.R. at 349–51; *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990).

The Court's interest-of-justice analysis here centers on consideration of what will promote fairness. At the hearing, the Court heard evidence indicating that Petitioning Creditors had no specific knowledge regarding the debtors' plans to file the Voluntary Cases. The Petitioning Creditors and their counsel, however, had reviewed the mortgage records recorded in Plaquemines Parish, Louisiana, filed between 2016 and 2023. The Petitioning Creditors suggested to the Court that those records reveal that the debtors had supplemented collateral descriptions in certain mortgages weeks prior to the filing of the Involuntary Case to include additional oil and gas properties, which could negatively impact the rights of trade creditors holding statutory liens under the Louisiana Oil Well Lien Act ("LOWLA"). The Petitioning Creditors told the Court that they filed the Involuntary Petition to stop the transfer of the debtors' assets and potential diminution of their rights.

If that were the sole evidence before the Court, then the Court might be inclined to grant more deference to the Petitioning Creditors' choice of venue. At a preliminary hearing on the Venue Motion, however, counsel explained the rationale for filing the Involuntary Case in this Court: "[T]here is a big open issue about the rights of lien creditors and it's in the Fifth Circuit, and we wanted to have a Louisiana fellow judge, Lafayette or here, decide these really important Louisiana issues, especially ranking and protection of these Louisiana trade creditors, involving an operating company that's located in New Orleans." Amarillo Ex. 9. At the evidentiary hearing and in their pleadings, the Petitioning Creditors and their counsel continued to make plain their primary reasoning for preferring this Court as the venue for the debtors' bankruptcy cases:

> [A]fter a prolonged period of increasingly-late payments and broken promises that service providers would be paid in due course, the Petitioning Creditors, alarmed by indications that the Debtors may be dissipating the collateral securing their claims and mulling bankruptcy, did what they deemed necessary to protect their rights and filed the Involuntary Petition in the Eastern District of Louisiana, seeking

> a Court conversant in issues of Louisiana law, including LOWLA, and a forum conducive to active participation from similarly-situated trade creditors.
>
> . . . .
>
> [T]here are paramount issues of Louisiana lien and mortgage law wrapped into an available preference issue as to the DIP lender's secured debt . . . .
>
> . . . .
>
> However, the Petitioning Creditors were primarily concerned with preventing the stripping of their liens, in light of the controlling 5th Circuit precedent in *Matter of ATP Oil & Gas Corp.*, 888 F.3d 122, 126–27 (5th Cir. 2018). Having received indications that the Debtors were selling off production, potentially impairing their lien rights, the Petitioning Creditors sought a forum well-versed in Louisiana law to halt the dissipation of the Debtors' assets and promptly resolve any related priority disputes.
>
> . . . .
>
> The Debtors' Louisiana properties are subject to priority disputes between the Debtors' secured lenders and LOWLA lienholders—disputes aggravated by the Debtors' actions immediately prior to the filing of the Involuntary Petition—which will be determined primarily by Louisiana sources of law and proof. LOWLA and Louisiana's mortgage laws provide the framework for resolving those disputes, and this Court's routine handling of such matters weighs in favor of keeping the Cases here.
>
> . . . .
>
> The Petitioning Creditors filed the case here in order to obtain a venue where crucial issues of Louisiana affecting the recovery available to Louisiana claimants can be resolved immediately . . . .

[ECF Doc. 42]. Or, as framed by another similarly situated party in interest: "This Court is conversant in issues arising under LOWLA and is the most convenient forum to adjudicate in rem claims made against a Louisiana domiciled Putative Debtor that are held by Louisiana domiciled creditors arising from operations based in Louisiana and/or off the coast of Louisiana." [ECF Doc. 44, ¶ 6].

In *Patriot Coal Corp.*, the United Mine Workers of America ("UMWA") and certain sureties requested the transfer of 99 affiliated debtors' cases from New York to West Virginia

based upon the perception that a West Virginia bankruptcy judge would provide a more empathetic forum and better understand their concerns—in other words, the UMWA and the sureties sought a forum that "would be a more advantageous forum for them and for them alone." 482 B.R. 718, 749–53 (Bankr. S.D.N.Y. 2012). But this Court's "analysis regarding the appropriate venue for these cases must focus on the interests and convenience of all parties, not just those of the [Petitioning Creditors]." *Id.* at 753.

The Court finds credible Omohundro's testimony regarding the debtors' unsuccessful endeavors to obtain out-of-court financing and their forced choice to negotiate with Amarillo and BPEC—their only prospects for debtor-in-possession financing—and to file for chapter 11 bankruptcy relief. The Court also acknowledges the representations of Omohumdro and the debtors' professionals' opinions that pursuing a going-concern sale process immediately gives the creditor body the best chance for recovery. That belief is backed by the support and investment of the DIP Lenders. Although it is true that trade claimants represent a significant and unique creditor body in these cases, the Court has a responsibility to consider the interests and expectations of the other parties in interest here in determining venue. "[I]t is not in the interest of justice merely to swap one party's perceived home field advantage for another." *Id*. at 750.

Moreover, in determining venue here, the Court must also be attuned to the perception of fairness in the bankruptcy process. Frankly, in analyzing the convenience of the parties and the interest of justice given the facts here, there is little upon which to base a venue determination. Bankruptcy courts routinely apply and interpret other states' laws and regulatory regimes and both venues are subject to the same substantive circuit law. Yet the decision to retain the putative debtor's case and administer its affiliates' cases in this district carries with it the enormous risk of fostering a perception that the decision was made solely to advantage the Petitioning Creditors

over all other stakeholders—and that is a risk this Court is not prepared to take. It is the Court's sincere view that, given the contours of this particular case, any determination that this district is the venue in which the bankruptcy cases of Cox Operating and its six affiliates should proceed would only serve to breed mistrust in the Court's evenhandedness and the bankruptcy process itself, thereby jeopardizing the opportunity to conserve and protect the value remaining in these estates to the detriment of all creditors.

The Court, therefore, finds that the debtors' choice of forum is entitled to enough deference to support a finding that, in the interest of justice, the Involuntary Case and Voluntary Cases should proceed in the SDTX.

Accordingly,

**IT IS ORDERED** that *Cox Operating, L.L.C.'s Emergency Motion To Transfer Venue* is **GRANTED**. The Clerk of the United States Bankruptcy Court for the Eastern District of Louisiana is directed to transfer the above-captioned involuntary bankruptcy case to the United States Bankruptcy Court for the Southern District of Texas.

**IT IS FURTHER ORDERED** that *Emergency Motion for Emergency Hearing and for Order Granting Leave To Effect Service of Involuntary Petition and for Determination of Priority of Involuntary Case Under the First-Filed Rule Over Later-Filed Voluntary Petition* is **DENIED WITHOUT PREJUDICE**. The Court's decision in no way affects the Petitioning Creditors' substantive rights with respect to the continued prosecution of the Involuntary Case in the SDTX.

**IT IS FURTHER ORDERED** that counsel for the Putative Debtor serve this Order via U.S. Mail on the required parties who will not receive a copy through this Court's CM/ECF system pursuant to the Federal Rules of Bankruptcy Procedure and this Court's Local Rules and file a certificate of service to that effect within three days.

New Orleans, Louisiana, May 23, 2023.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE